UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ERIC A.,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:24-cv-00627<br><br>Magistrate Judge Daphne A. Oberg |

Eric A.[1] brought this action for judicial review of the denial of his application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2]  The Administrative Law Judge (ALJ) who addressed Mr. A.'s application determined he did not qualify as disabled.[3]  Mr. A. argues the ALJ erred by failing to consider lay opinion evidence from four individuals.[4]  However, any error in failing to discuss this evidence was harmless, where it is

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–25, Doc. No. 9.)

[4] (Opening Br. 8–13, Doc. No. 12.)

cumulative of other evidence the ALJ expressly considered and discussed.

Accordingly, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And

the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" expected to result in death or last for at least twelve consecutive months.[13]

An individual is considered disabled only if his impairments are so severe, he cannot

perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step

sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful

   activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5)  he has the residual functional capacity to perform other work, considering his

age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at

step five, the Commissioner must show the claimant retains the ability to perform other

work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. A. applied for disability insurance benefits and supplemental security income

in July and August 2022.[18]  After an administrative hearing, the ALJ issued a decision,

finding Mr. A. not disabled and denying benefits.[19]

At step two of the sequential evaluation, the ALJ found Mr. A. had the severe

impairments of "degenerative disc disease of the cervical spine, status post discectomy

and fusion; scoliosis of the thoracic spine; degenerative disc disease of the thoracic

spine and lumbar spine; depression; and anxiety."[20]  The ALJ also determined Mr. A.'s

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 17, 185–202.)

[19] (Tr. 17–25.)

[20] (Tr. 20.)

obesity was a nonsevere impairment.[21]  At step three, the ALJ concluded these impairments did not meet or medically equal an impairment listing.[22]

The ALJ then found Mr. A. had the residual functional capacity (RFC) to perform "light work" with certain limitations:

> he can stand and/or walk for 4 hours in an 8-hour work day; he can occasionally perform all postural limitations except he can never climb ropes, ladders, or scaffolds; he can occasionally overhead reach and frequently reach in other planes; he can frequently handle; and he can understand, remember, and carry out simple and detailed instructions. [23]

At step four, after considering the testimony of a vocational expert, the ALJ concluded Mr. A. could perform past work as a customer order clerk, a sedentary position.[24]

Accordingly, the ALJ found Mr. A. not disabled and denied his claims.[25]

The Appeals Council denied Mr. A.'s request for review,[26]  making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Mr. A. raises a single claim of error: he argues the ALJ failed to consider lay opinion evidence from four individuals—Mr. A.'s aunt, sister, daughter, and pastor.[27]

---

[21] (*Id.*)

[22] (Tr. 20–21.)

[23] (Tr. 21–22.)

[24] (Tr. 25.)

[25] (*Id.*)

[26] (Tr. 1–3.)

[27] (Opening Br. 8–13, Doc. No. 12.)

These individuals submitted letters on Mr. A.'s behalf.[28]  Although the letters are listed

as hearing exhibits,[29] the ALJ's decision does not specifically mention them.  Mr. A.

contends these witness statements are probative of the effect of his medical

impairments on his functional ability.[30]  He argues the ALJ's failure to address them

requires remand.[31]

In response, the Commissioner argues the governing regulations do not require

the ALJ to discuss evidence from nonmedical sources.[32]  According to the

Commissioner, Mr. A. relies on inapplicable cases (decided under a prior version of the

regulations) requiring ALJs to articulate how they consider nonmedical opinion

evidence.[33]  The Commissioner also contends the ALJ's statement that he considered

the "entire record" shows he reviewed the witness statements at issue.[34]  Alternatively,

the Commissioner asserts any error in failing to address this evidence is harmless.[35]

Mr. A. did not file a reply.

---

[28] (Tr. 328–29, 331, 333, 335–36.)

[29] (*See* Tr. 28–29 (labeled as exhibits 15E though 18E).)

[30] (Opening Br. 10–11, Doc. No. 12.)

[31] (*Id.* at 11–13.)

[32] (Comm'r's Answer Br. 3–5, Doc. No. 16.)

[33] (*Id.* at 5.)

[34] (*Id.* at 5–6.)

[35] (*Id.* at 6–9.)

The governing regulations describe five categories of evidence in social security cases: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[36] For claims (like Mr. A.'s) filed on or after March 27, 2017, the regulations require ALJs to articulate how they consider medical opinions and prior administrative medical findings, using specific factors.[37] But ALJs do not need to articulate how they consider evidence from nonmedical sources.[38]

By contrast, under the regulations applicable to claims filed before March 27, 2017, ALJs had to consider opinions from nonmedical sources using the factors applicable to medical opinion evidence.[39] According to those regulations, ALJs "should generally explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."[40]

---

[36] 20 C.F.R. §§ 404.1513(a), 416.913(a).

[37] *Id.* §§ 404.1520c(a)–(c), 416.920c(a)–(c).

[38] *Id.* §§ 404.1520c(d), 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in this section"); *see also David L. v. Kijakazi*, No. 2:21-cv-00028, 2021 U.S. Dist. LEXIS 239825, at *13 (D. Utah Dec. 14, 2021) (unpublished) (stating § 404.1520c(d) "provides that an[] ALJ is not required to articulate how he or she considers evidence from nonmedical sources," and collecting cases stating the same).

[39] 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

[40] *Id.* §§ 404.1527(f)(2), 416.927(f)(2).

In support of his argument, Mr. A. relies on *Blea v. Barnhart*[41] and *Adams v. Chater*,[42] Tenth Circuit opinions addressing claims filed before 2017.  In *Adams,* the court concluded an ALJ did not need to make specific written findings regarding the claimant's wife's credibility (under the pre-2017 regulations), so long as "the written decision reflects that the ALJ considered [her] testimony."[43]  The court found it "clear that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion."[44]  Conversely, in *Blea*, the court found it unclear whether the ALJ considered the claimant's wife's testimony where he "made no mention of [her] testimony, nor did he refer to her testimony anywhere in the written decision."[45]  Because the testimony was uncontroverted and corroborated by a psychiatric examination, the court found this failure to discuss it required remand.[46]

As the Commissioner notes, the Tenth Circuit decided *Adams* and *Blea* before the regulations changed to omit the requirement that ALJs articulate how they consider evidence from nonmedical sources.  But notwithstanding those revisions, "[t]he record must demonstrate that the ALJ considered all of the evidence."[47]  And while an ALJ "is

---

[41] 466 F.3d 903 (10th Cir. 2006).

[42] 93 F.3d 712 (10th Cir. 1996).

[43] *Id.* at 715.

[44] *Id.*

[45] 466 F.3d at 915.

[46] *Id.*

[47] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[48]

The Commissioner argues the ALJ's statement that he considered the "entire record" accounts for the witness statements at issue, since they were listed as exhibits.[49]  In support of this, the Commissioner cites *David L. v. Kijakazi*.[50]  In *David L.*, the court found an ALJ's statements that he "considered all the record evidence" adequate to show consideration of nonmedical evidence not specifically discussed in the decision.[51]  But other courts have rejected "the proposition that mere boilerplate language is enough for the reviewing court to assume an ALJ considered the evidence without any indication in the record that this occurred."[52]

Here, it is unnecessary to decide whether the ALJ erred in failing to discuss the witness statements at issue.  Even assuming the ALJ erred in failing to mention this

---

[48] *Id.* at 1009–10; *Galloway v. Comm'r*, No. 23-4054, 2024 U.S. App. LEXIS 8477, at *6– 7 (10th Cir. Apr. 9, 2024) (unpublished) (applying this standard to a post-March 2017 claim); *Davis v. Comm'r of Soc. Sec.*, No. 21-3148, 2022 U.S. App. LEXIS 14993, at *11 (10th Cir. June 1, 2022) (unpublished) (same).

[49] (Comm'r's Answer Br. 5–6, Doc. No. 16; *see also* Tr. 19, 21 (stating the ALJ's findings were made after "careful consideration of the entire record").)

[50] No. 2:21-cv-00028, 2021 U.S. Dist. LEXIS 239825 (D. Utah Dec. 14, 2021) (unpublished).

[51] *Id.* at *13.

[52] *Andrew A. v. Kijakazi*, No. 2:22-cv-00530, 2023 U.S. Dist. LEXIS 171030, at *8 (D. Utah Sept. 25, 2023) (unpublished) (internal quotation marks omitted) (citing *Andrea D. W. v. Kijakazi*, No. 20-CV-523, 2022 U.S. Dist. LEXIS 56202, at *13 n.8 (N.D. Okla. Feb. 9, 2022) (unpublished)).

evidence, any error was harmless.  In *Best-Willie v. Colvin*,[53] the Tenth Circuit found an ALJ's failure to discuss a lay witness statement harmless where "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims."[54]  Specifically, the court noted the witness statement was "cumulative of [the claimant's] testimony concerning her limitations and reports of pain, which the ALJ discussed and found not credible."[55]  Similarly, in *Brescia v. Astrue*,[56] the Tenth Circuit found an ALJ's failure to discuss written statements from the claimant's sister and friend did not require remand where the evidence "was largely cumulative of [the claimant's] testimony and written statements."[57]

As in *Best-Willie* and *Brescia*, the witness statements at issue here are cumulative of evidence the ALJ expressly considered and discussed.  Mr. A.'s niece wrote that Mr. A.'s neck pain had a "severe impact" on his personal and professional life; he was "unable to look side to side or up and down"; if he sat too long, it became difficult for him to stand up again; daily activities such as picking something up from the floor or putting on socks had become "nearly impossible"; and he was unable to attend church because of his condition.[58]  According to his sister, Mr. A. could not "move, turn,

---

[53] 514 F. App'x 728 (10th Cir. 2013) (unpublished).

[54] *Id.* at 736 (citation modified).

[55] *Id.*

[56] 287 F. App'x 626 (10th Cir. 2008) (unpublished).

[57] *Id.* at 630.

[58] (Tr. 328.)

[or] carry things" and, some days, he couldn't get out of bed because of pain.[59]  Mr. A.'s daughter noted that he could not turn his neck and could not sit or stand for very long.[60] And his pastor wrote that Mr. A. couldn't "go out or have a social life" due to pain, had missed church because of his condition, and could not take care of personal hygiene without pain.[61]

These statements are similar to those found in Mr. A.'s own written function report, his hearing testimony, and a function report submitted by his sister[62]—all of which the ALJ expressly considered and discussed.  In his own function report, Mr. A. stated he had pain and restricted motion in his back and neck.[63]  He reported stiffness and pain when performing personal care, and noted he did not do house or yard work because it made his condition worse.[64]  Mr. A. reported driving his daughters to school.[65]  He also noted he generally attended church three times a week, but sometimes did not go because of his pain.[66]  Mr. A. indicated his conditions affected his

---

[59] (Tr. 329.)

[60] (Tr. 331.)

[61] (Tr. 333, 335–36.)

[62] (*See* Tr. 256–63 (Mr. A.'s function report); Tr. 38–61 (Mr. A.'s hearing testimony); Tr. 268, 273–79 (function report from Mr. A.'s sister).)

[63] (Tr. 256.)

[64] (Tr. 257–58.)

[65] (Tr. 259.)

[66] (Tr. 260.)

ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, complete tasks, and use his hands.[67]  He stated he could only lift fifteen pounds and walk for ten minutes.[68]  At the hearing, Mr. A. testified to similar limitations, stating he had trouble reaching overhead and reaching down to tie shoelaces, he could not bend past his knees, and it was hard to get up after picking up an item at floor level.[69]  He testified he was in constant pain and typically spent more than half of the day lying down on his side.[70]

In a written function report, Mr. A.'s sister said the pain in Mr. A.'s body interfered with standing, sitting, or making "much movement."[71]  According to his sister, Mr. A. rested all day and had no social life.[72]  She also indicated his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, complete tasks, and use his hands, and he could not walk longer than ten minutes.[73]

---

[67] (Tr. 261.)

[68] (*Id.*)

[69] (Tr. 46–48, 55.)

[70] (Tr. 59–61.)

[71] (Tr. 268.)

[72] (Tr. 273, 277.)

[73] (Tr. 277.)

In his decision, the ALJ specifically acknowledged the symptoms and limitations Mr. A. reported in his hearing testimony and function report.[74]  And although the ALJ did not mention the sister's letter, he addressed her function report, noting she "indicate[d] the claimant has trouble with movement and walking long distances, irritability, and difficulty concentrating and paying attention."[75]  Put differently, although the ALJ did not discuss the other lay witness statements, he expressly considered evidence from Mr. A. and his sister describing the same symptoms and limitations.

The ALJ ultimately found these reported symptoms and limitations were "not entirely consistent with the medical evidence and other evidence in the record."[76] Substantial evidence supports this finding.  As the ALJ noted, a consultative examiner opined Mr. A. had moderate limitations with sitting, standing and/or walking, and carrying weight, but he did not have any significant limitations with lifting.[77]  The examiner also opined Mr. A. could never bend, stoop, crouch, or squat, but he could frequently reach, and had no limitation with grasping, handling, fingering, or feeling.[78] During the examination, Mr. A. could squat and rise from that position with difficulty; get up and down from the exam table with ease; tandem walk normally; and stand (but not

---

[74] (Tr. 20–22 (discussing and citing Mr. A.'s hearing testimony and function report, labeled Exhibit 5E).)

[75] (Tr. 22 (discussing and citing the function report from Mr. A.'s sister, labeled Exhibit 6E).)

[76] (Tr. 22–23.)

[77] (Tr. 24 (citing Tr. 889).)

[78] (*Id.* (citing Tr. 889).)

hop) on one foot, bilaterally.[79]  The ALJ found this evidence "consistent with a light exertional level with a limitation of standing and/or walking for 4 hours in an 8-hour workday with additional postural and manipulative limitations."[80]

The ALJ also discussed prior administrative findings indicating Mr. A. was capable of light exertion, and standing or walking for six hours and sitting for six hours in an eight-hour work day.[81]  Although the ALJ found these opinions partially persuasive, he found the overall evidence consistent with greater limitations in Mr. A.'s ability to stand or walk and his postural and manipulative activities.[82]  In other words, the ALJ found Mr. A. more limited than the administrative findings indicated.  This evidence from the consultative examination and prior administrative findings is more than a "mere scintilla."[83]  It constitutes substantial evidence supporting the ALJ's finding that Mr. A. was not as limited as he alleged.

Where the lay witness statements at issue described the same limitations as other evidence the ALJ considered, and the ALJ articulated valid reasons supported by substantial evidence for finding lesser limitations, any error in failing to discuss the witness statements was harmless.  Accordingly, the Commissioner's decision is affirmed.

---

[79] (Tr. 23, 887.)

[80] (Tr. 23.)

[81] (Tr. 24 (citing Tr. 72–73, 80–81, 88–89, 97–98).)

[82] (*Id.*)

[83] *Biestek*, 587 U.S. at 103.

**CONCLUSION**

The Commissioner's decision is affirmed.

DATED this 24th day of September, 2025.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge